IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **TOMMIE SHARP**, | Case No. 3:20-cv-01143-IM |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| **TA OPERATING LLC dba TRAVELCENTERS OF AMERICA**, | |
| Defendant. | |

Willard E. Merkel, Merkel & Associates, 1 SW Columbia St. Ste. 520, Portland, OR 97004. Attorney for Plaintiff.

Julie Bardacke Haddon, Brian J. Kernan, Gordon Rees Scully Mansukhani, LLP, 1300 SW 5th Ave. Ste. 2000 Portland, OR 97201. Attorney for Defendant.

**IMMERGUT, District Judge.**

    Plaintiff Tommie Sharp brings this negligence action against Defendant TA Operating LLC, alleging a claim of premises liability related to an injury sustained on Defendant's

PAGE 1 – OPINION AND ORDER

property. ECF 2. Presently before this Court is Defendant's Motion for Summary Judgment. ECF 10. This Court held a hearing on Defendant's motion on September 10, 2021. After considering the pleadings, the admissible facts in the record, and the arguments of counsel, this Court finds that there are material facts in dispute with respect to Plaintiff's status as an invitee or licensee at the time of his injury. For the reasons set forth below, this Court denies the Defendant's motion.

## STANDARDS

A party is entitled to summary judgment if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden of establishing the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The court must view the evidence in the light most favorable to the non-movant and draw all reasonable inferences in the non-movant's favor. *Clicks Billiards, Inc. v. Sixshooters Inc.*, 251 F.3d 1252, 1257 (9th Cir. 2001).

Although "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment," the "mere existence of a scintilla of evidence in support of the plaintiff's position [is] insufficient. . . ." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 255 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation and quotation marks omitted).

The evidence presented by the parties must be admissible. *Wady v. Provident Life & Accident Ins. Co. of Am.*, 216 F. Supp. 2d 1060, 1065 (C.D. Cal. 2002) (citing Fed. R. Civ. P. 56(e)). Further, the non-moving party may not rest on conclusory or speculative evidence but

rather must "set forth specific facts in support of [its] . . . theory." *Thornhill Pub. Co., Inc. v. Gen. Tel. & Elecs. Corp.*, 594 F.2d 730, 738 (9th Cir. 1979) (citing Fed. R. Civ. P. 56(e)).

## BACKGROUND

On July 26, 2018, Plaintiff Tommie Sharp arrived at Defendant TA Operating LLC's property at 790 NW Frontage Road, Troutdale, Oregon ("TravelCenters") at some approximate time between 4:00 and 5:30 PM. ECF 11-1 at 5. Plaintiff testified that he went to TravelCenters that day to clean trailers and collect cans. *Id.* Plaintiff testified that he first began going to TravelCenters to collect cans "around '16, '17. Something like that." *Id.* at 4. He would go to TravelCenters during the summer and during the spring and that he would do so "maybe once a month" within those seasons. *Id.* Plaintiff never asked anyone at TravelCenters if he could collect cans or clean trailers at the property but "assumed it was okay because other people were—a lot of other people were doing it too." *Id.* at 5. On each visit to the TravelCenters, he would buy a beverage or meal virtually every time. *Id.*

Plaintiff testified that when he went to TravelCenters on July 26, 2018 solely to collect cans and clean trailers, he was not invited to the property by anyone at TravelCenters "because [he] didn't know nobody." *Id.* Plaintiff testified that he was "walking towards the store" on the property at the time of his fall. *Id.* He was carrying a large garbage bag and a backpack. *Id.* at 10. The backpack was empty (*id.* at 11) and the garbage bag was "halfway" full of cans and weighed "probably about 5 pounds—5, 10 pounds" (*id.* at 10–11). Plaintiff testified that he was walking on the back side of the fuel aisle, paying attention to the traffic coming. *Id.* at 10. He further stated: "I was looking straight ahead. And I had—my head was on swivel, looking around, making sure, you know, I don't get run over by a truck." *Id.* Plaintiff testified that as he walked around a trailer, he "ended up falling in a hole." *Id.* Plaintiff testified that his "entire body went into the ditch. *Id.* "My left side went into the ditch. My right side crunched . . . because it was

PAGE 3 – OPINION AND ORDER

trying to compensate for the left, the loss of balance." *Id.* Plaintiff testified that, ultimately, his entire body hit the ground and he remained on the ground for one to five minutes before he got up. *Id.* at 11. Plaintiff testified that he has no knowledge as to how long the ditch had been in this condition. *Id.* at 9. Plaintiff testified that prior to July 26, 2018, he had never observed a gap in the grating over a ditch at TravelCenters. *Id.* at 10.

      Plaintiff testified that after he got up, he walked to the convenience store at TravelCenters and reported to Justin, a TA employee, that he "just fell into that hole—manhole out there on the fuel drainage ditch." *Id.* at 12. Plaintiff recalled that he said words to the effect of, "[h]ow come it's not cordoned off or some kind of cone?" *Id.* According to Plaintiff, Justin's reaction was, "Oh, that's that hole out there that he was working on." *Id.* According to Plaintiff, Justin said "[s]ome guy that just came that was working on the hole, and they was supposed to have been back in two or three days." *Id.* Plaintiff testified that he asked Justin, "You're not going to cover it?" to which Justin replied "No, they'll be back soon." *Id.* Plaintiff testified that he spoke to Justin for "maybe five, ten minutes" and the assistant manager walked up and said, "Somebody else fell in that hole." *Id.* Justin then clarified that Plaintiff was the person that fell into the hole. *Id.* Plaintiff said that he told the assistant manager, "[s]omebody needs to cover [the hole]" and that "[n]either one of them [Justin or the assistant manager] said anything." *Id.* After the accident, Plaintiff purchased a soda from the convenience store. *Id.* at 5.

      Patti Covey, the General Manager at TravelCenters (ECF 11-2 at 2), testified that she arrived at work around 6 AM on July 27, 2018 and learned of Plaintiffs report from Lisa Dryer, the Assistant General Manager at TravelCenters (*id.* at 3). Ms. Covey testified that after receiving this report, she immediately went outside and observed a gap in a grate covering as described by Plaintiff. *Id.* Ms. Covey testified that the grate had moved laterally down the ditch,

PAGE 4 – OPINION AND ORDER

creating the gap. *Id.* at 4. There was not a section of grate missing, but rather the grate had become dislodged and had moved. *Id.* Ms. Covey corrected the condition by manually moving the grate back into place. ECF 12 at 2. The parties agree that the dimensions of the hole were approximately 1 foot long by a half foot wide. ECF 26 at 2. The parties dispute the depth of the hole. Ms. Covey testified that the area in question was off to the east side of the front door of the convenience store, approximately 25 to 30 feet from the front door. ECF 11-2 at 5. Ms. Covey testified that she does not know when the gap condition that she observed was originally created. *Id.* at 4.

     Ms. Covey has worked at TravelCenters for 16 years. *Id.* at 2. Ms. Covey testified that in this time, small gaps had developed in the grates over irrigation ditches on the property from trucks driving over the grates (*id.* at 3) but never to the extent she observed on July 27 (*id.* at 5). Ms. Covey testified that, prior to July 27, 2018, she had observed this type of condition "maybe four or five times in 16 years." *Id.* Ms. Covey testified that she has never encountered a situation where the grates have moved and she is unable to repair the condition herself by moving the grates back into place. *Id.* Ms. Covey is not aware of any other accidents at the site or reports of accidents at the site involving a person falling into a ditch due to a gap in the grating covering the ditch. ECF 12 at 2. Ms. Covey testified that she walks the site every day at least once a day to check for conditions such as the one allegedly encountered by Plaintiff. ECF 11-2 at 5. Ms. Covey testified that she also instructs other employees at the site to monitor for these type of issues. *Id.* Ms. Covey testified that she "probably" inspected the area the morning of July 26, 2018 (but does not recall specifically). *Id.* Plaintiff indicated that when he returned to the property the Saturday after the accident to take photographs, there was a cone next to gap in the grating. ECF 11-1 at 7, 13.

**DISCUSSION**

Defendant makes three arguments in support of summary judgment. First, it argues that Plaintiff cannot establish a genuine issue of material fact as to whether Plaintiff's status was more than a licensee at the time of injury. Second, it argues that Plaintiff cannot establish a genuine issue of material fact as to whether Plaintiff's alleged injury arose from an activity on the land—as opposed to a condition on the land. And finally, it argues that Plaintiff cannot establish a genuine issue of material fact as to whether the Defendant was grossly negligent or knowingly failed to warn of a trap or pitfall. This Court finds that there is a genuine dispute over Plaintiff's status. Because Defendant's remaining arguments assume that Plaintiff was, at best, a licensee, it is unnecessary for this Court to address its duty of care arguments here.

**A. Oregon Law on Premises Liability**:

Oregon law governs this diversity action. "[I]n an ordinary diversity case where the state law does not run counter to a valid federal statute or rule of court, and usually it will not, state law . . . which reflects a substantial policy of the state, should be followed." *Alaska Rent–A–Car, Inc. v. Avis Budget Grp., Inc.*, 738 F.3d 960, 973 (9th Cir. 2013) (quoting *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 259 n.31 (1975)).

"Oregon adheres to the traditional rules governing the liability of an owner or possessor of land, under which the duties that the occupier owes to a person who comes on the land depend on whether the person is an invitee, licensee, or trespasser." *Walsh v. C & K Mkt. Inc.*, 171 Or. App. 536, 539 (2000). In *Walsh*, the Oregon Court of Appeals laid out two tests used in Oregon to determine whether one who comes on to land is an invitee. First, under the "economic advantage" test, "anyone who comes on the premises for business that concerns the occupier, with the occupier's express or implied invitation, is an invitee." *Walsh*, 171 Or. App. at 539. Second, under the "invitation" test, "a person is an invitee when the occupier, expressly or

PAGE 6 – OPINION AND ORDER

impliedly, leads the person to believe that it intended visitors to use the premises for the purpose that the person is pursuing and that the use was in accordance with the intention or design for which the premises were adapted or prepared." *Id.* While a person on the land need only satisfy one of the tests to be considered an invitee, failure to meet either test means that the person is, at best, a licensee. *Parker v. Hult Lumber & Plywood Co.*, 260 Or. 1, 8–9, 11 (1971).

A licensee is defined as "one who comes upon the premises for his own purposes with the consent of the possessor." *Rich v. Tite–Knot Pine Mill*, 245 Or. 185, 191 (1966). These categories, however, are not static. "A person who comes on another's premises may be a licensee or invitee for one purpose or part of the premises and not for another." *Id.* at 192. The duties incumbent on a possessor of property varies depending on whether the person is an invitee or a licensee. A possessor owes the greatest duty to invitees, "including both a duty to warn of latent dangers and an affirmative duty to protect the invitee against dangers in the condition of the premises about which the occupier knows or should reasonably have known." *Walsh*, 171 Or. App. at 539. A "possessor owes no duty to a licensee to put his premises in a safe condition but is under an obligation to disclose to the licensee any concealed, dangerous conditions of the premises of which he has knowledge." *Rich*, 245 Or. at 191.

**B. Plaintiff's Status at the Time of Injury**:

The parties disagree over Plaintiff's status at the time of his injury. Defendant concedes that questions of material fact exist as to whether Plaintiff was a trespasser. ECF 10 at 10. Accordingly, this Court's analysis will center on whether Plaintiff could be considered an invitee or licensee at the time of the incident. Plaintiff argues that he was an invitee when he injured himself on the Defendant's exposed grate. Defendant insists that Plaintiff was, at best, a licensee to whom a lower duty of care is owed.

This Court finds that there is a genuine dispute of material fact as to Plaintiff's status as an invitee. A jury could reasonably conclude that Plaintiff satisfies the standard to be considered both a public and business invitee.[1] Under the "invitation test," the "crucial issue . . . is the nature of the invitation that a store owner gives to the general public." *Walsh*, 171 Or. App. at 540. Thus, "invitee status will depend on both the purpose of the occupier who makes the invitation to the public and the understanding of the public that receives it." *Id.* at 541. TravelCenters is a full-service travel center and truck stop used by truck drivers and other motorists. It also offers an array of services including a restaurant and convenience store that is open to the public. Because the operator of a store selling general merchandise provides an invitation "to the public [that] is likely to be quite broad," it follows that Plaintiff could fall within its scope. *See id.* A store like TravelCenters is "likely to view every person who enters as a potential customer." *See id.* This even includes a potential customer like Plaintiff who may have entered the premises with no intention to make a purchase. *See id.* (noting that an invitation "is not necessarily limited to people who are interested in making a purchase during that specific visit"). In fact, the Court in *Walsh* even went as far to endorse the argument that a person who enters a store "only to kill time between airplanes and intends to buy nothing," could still be considered an invitee "because store owners want to encourage as many people as possible to view their goods and to become purchasers." *Id.* at 542. The jury, therefore, could find that Plaintiff was an invitee under this test.

Similarly, analysis of the facts under the "economic advantage test" also produces a genuine dispute of material fact. This test addresses invitees who enter with the express or

---

[1] Courts make the distinction between "public invitees" and "business invitees." *See, e.g.*, *Cain v. Bovis Lend Lease, Inc.*, 817 F. Supp. 2d 1251, 1272–73 (D. Or. 2011). The term "public invitee" is used to describe an invitee who has satisfied the "invitation test." Similarly, "business invitee" refers to an invitee under the "economic advantage test."

implied invitation of the owner for business that concerns them. *Walsh,* 171 Or. App. at 539. The relevant question is whether, at the time of injury, the plaintiff's "presence was of material benefit to defendants." *Johnson v. Short*, 213 Or. App. 255, 264 (2007). While Defendant claims there was no business relationship between the parties, facts in the record put this issue in dispute.

First, Defendant argues that because Plaintiff came to TravelCenters with his own personal purpose—collecting cans and cleaning motorists' trailers—he cannot assume the status of anything more than a licensee. ECF 11-1 at 5. But to be considered a business invitee, it is not necessary that a plaintiff's "immediate purpose" relate to a defendant's business. *Walsh*, 171 Or. App. at 543 ("[T]he very fact that the plaintiff was in the defendant's store, even though the plaintiff's immediate purpose had nothing to do with the defendant's business, was held to be to the defendant's economic advantage."). So long as a business invitee otherwise meets the requirements under the economic advantage test, there is nothing in Oregon law that categorically prohibits an invitee from having multiple purposes when visiting an establishment. Plaintiff could still be considered an invitee in a scenario where he visited the premises with the primary intent to collect cans and then purchase a beverage from the convenience store afterward. And facts in the record put the circumstances of his visit into dispute. Plaintiff claimed that he frequented TravelCenters once a month. ECF 11-1 at 4. And when he did visit, he "always bought something out of the store every time [he] went" like a meal or beverage. *Id.* at 5. These disputed facts bear on the evaluation of Plaintiff's status as an invitee. As *Walsh* discusses, the frequency of a patron's visits and her general shopping habits at the defendant's store can bear on the question of economic advantage. *See Walsh*, 171 Or. App. at 543–44.

While it is true that on the day of the incident, Plaintiff made his first TravelCenters purchase *after* his injury, this fact does not prohibit a jury from finding that he was still an invitee. ECF 11-1 at 5. Even if Plaintiff's intentions were not to purchase an item from the convenience store before the injury, a jury could still find sufficient facts to establish his status as an invitee. Oregon courts have interpreted the "economic advantage" test broadly as to store owners and the patrons they serve. A plaintiff who did not intend to make a purchase can still bestow an economic benefit to a store owner because customers can "readily" change their mind and decide to make a purchase. *See Walsh*, 171 Or. App. at 543. Additionally, "[f]oot traffic of any sort" has been recognized as beneficial to the business of a store operator. *Id.* As a result, Plaintiff's mere presence reinforces his general habit of shopping at the convenience store and makes it more likely that he will purchase something that catches his eye. *Id.*

Oregon case law does recognize a floor with respect to the kinds of acts that can properly be considered an economic benefit under the test. But in those cases when invitee status was rejected, the purported benefits were so "ephemeral and negligible" that the plaintiff's actions could hardly be considered an economic advantage at all. *See, e.g.*, *Parker*, 260 Or. at 9 (refusing to find a sufficient economic advantage when the plaintiff's removal of waste materials did not save the defendant employer any time or money). There is testimony in the record that Plaintiff visited the premises at least once a month and bought food or a soda, and that he somewhat regularly cleaned trailers for truckers who were Defendant's customers. On these facts, this Court cannot conclude as a matter of law that Plaintiff's actions conferred no economic benefit on Defendant. Rather, it is a question for the jury.

Defendant's remaining arguments on summary judgment involve issues related to a possessor's duty of care to a licensee. It is clear from the record that the parties do not agree on

PAGE 10 – OPINION AND ORDER

whether the Defendant's duty of care was satisfied and that there are material issues of fact in dispute on this issue. For example, it is disputed whether Defendant was aware of the condition, and whether the condition was open and obvious. Defendant's motion does not address the duty of care assuming Plaintiff is an invitee. Accordingly, Defendant's Motion for Summary Judgment is denied.

## CONCLUSION

For these reasons, Defendant's Motion for Summary Judgment, ECF 10, is DENIED.

**IT IS SO ORDERED**.

DATED this 14th day of September, 2021.

/s/ Karin J. Immergut
Karin J. Immergut
United States District Judge